IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

IN THE MATTER OF:

JACKSON CERAMIX SITE                          Misc. No. 22-1254

Property adjoining: Clearfield County, Pennsylvania
Parcels Nos. A02-34 and A02-42 and Jefferson County,
Pennsylvania Parcel Nos. 10-001-0301G, 10-001-0100A,
and 40-369

## MEMORANDUM OF LAW IN SUPPORT OF THE UNITED STATES' *EX PARTE* APPLICATION FOR ADMINISTRATIVE WARRANT

### PRELIMINARY STATEMENT

The United States of America submits this Memorandum of Law in support of its Application ("Application") for an *Ex Parte* Administrative Warrant ("Warrant") pursuant to the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended ("CERCLA"), 42 U.S.C. §§ 9601 *et seq*. The Warrant would authorize entry and access for any employee, contractor, subcontractor, or representative of the United States Environmental Protection Agency ("EPA") onto an unidentified parcel known to the United States as part of the Jackson Ceramix Superfund Site ("Site") in Falls Creek, Jefferson and Clearfield Counties, Pennsylvania, and surrounded by Clearfield County, Pennsylvania Parcel Nos. A02-34 and A02-42, and Jefferson County, Pennsylvania Parcel Nos. 10-001-0301G, 10-001-0100A and 40-369 ("Property"), to investigate the release or threat of release of hazardous substances, including lead, conduct sampling, and determine the need for response activities. Despite extensive efforts to locate the owner of the Property, the EPA has been unable to identify the landowner and obtain consensual access.

1

## FACTUAL BACKGROUND

### A.  The Jackson Ceramix Site

The Site consists of approximately 233 acres of land located to the east and south of Falls Creek in Jefferson and Clearfield Counties, Pennsylvania. Declaration of Katherine Mishkin, ¶ 5.a, attached to the Application as Exhibit A, ("Mishkin Declaration"). A china manufacturing plant ("plant") operated at the Site between approximately 1917 through 1985. The plant was abandoned in 1985. A fire destroyed about 75 percent of the plant in 1989. Mishkin Declaration, ¶ 5.b. Operation of the plant resulted in the contamination of soil, subsurface soil, surface water, and groundwater with hazardous substances including heavy metals, volatile organic compounds (VOCs), and semi-VOCs. Mishkin Declaration, ¶ 5.c.

Today, the location of what is now the Former Manufacturing Area is primarily a grass-covered open field bordered on its west side by residential properties. Mishkin Declaration, ¶ 5.d. Down-gradient from the Former Manufacturing Area is a much larger, approximately 200-acre, wetland area ("Wetland Area") that discharges into the Sandy Lick Creek and constitutes a portion of the Sandy Lick Creek floodplain. Mishkin Declaration, ¶ 5.g.

Historic operations at the plant discharged large volumes of manufacturing wastewater into areas known as the Northern Drainage Channel and the Former Lagoon. Over time, the wastewater running from the Former Manufacturing Area to these locations created a white, silty-clay sludge containing high concentrations of lead, a hazardous substance. Mishkin Declaration, ¶¶ 5.f, g., and i.

Investigations to date indicate that a 48-inch culvert, along with surface overflow in areas surrounding the culvert, has deposited the lead-containing waste sludge from the Former Lagoon into the much larger, 200-acre, Wetland Area in the Sandy Lick Creek Floodplain. Mishkin

Declaration, ¶ 12.d.

### B.  Response to Site Contamination

Due to the high concentrations of lead at the Site, an emergency action was taken in 1989 to remove lead from the Former Manufacturing Area. Mishkin Declaration, ¶ 5.l. In 2005, the entire Site (comprised of the Former Manufacturing Area, Northern Drainage Channel, Former Lagoon, and Wetland Area) was placed on the Superfund National Priorities List. Mishkin Declaration, ¶ 5.n.

The Site has been divided into three portions known as Operable Units ("OUs") for purposes of response. Mishkin Declaration, ¶ 5.h. The Property is located in Operable Unit 2 ("OU2").[1] Mishkin Declaration, ¶ 7.f.

In March 2021, EPA issued a Record of Decision ("ROD") selecting a Remedial Action for Operable Unit 1 ("OU1"), which includes the Former Manufacturing Area and nearby Former Settling Lagoon and is currently designing the Remedial Action selected for OU1. Mishkin Declaration, ¶ 5.q.

EPA is performing a Focused Feasibility Study to identify and evaluate alternatives for remedial action at OU2. Following completion of the Focused Feasibility Study, EPA expects to issue a Proposed Plan which identifies EPA's preferred remedial alternative, publish notice of the availability of the Proposed Plan and the administrative record, take comment during a public comment period, and issue a Record of Decision for OU2 in which remedial action is formally selected. EPA may elect to address certain contamination at a portion of OU2 via an interim remedial action followed subsequently by selection of a final remedial action for OU2. Mishkin Declaration, ¶ 6.

---

[1] *See* black triangular boundary depiction attached as Exhibit A, Attachment 2.

3

Recently, while preparing remedial planning in the Wetland Area, EPA's contractor entered the Property on several occasions to perform sampling work. Due to the dense vegetation and lack of clear property line markings, EPA contractors were operating under the assumption that the Property was part of Parcel A02-34. After comparing the sampling map for the Site with a parcel map of the area, EPA noticed a discrepancy and realized the Property is a separate parcel of land, with no identifying parcel number in either Clearfield County or Jefferson County parcel maps. The Property is approximately fourteen (14) acres and sits on the boundary of the two counties. *See* Mishkin Declaration, ¶¶ 7.f, 9.

EPA and its contractors require access to the Property to perform sampling work. The Site was characterized through an earlier Remedial Investigation, but ongoing sampling is required to supplement data gathered in the Remedial Investigation for the Wetland Area to assist with ongoing remedial efforts at the Site. If a remedy is selected to take an interim remedial action in the OU2 area to eliminate source material containing the highest concentrations of lead in the Wetland Area, the samples will be used to refine the area where EPA will undertake the remedial action. *See* Mishkin Declaration, ¶¶ 8, 13.

### C.  EPA's Attempts to Locate the Owner of the Property

The Remedial Project Manager ("RPM") for the Site, Katherine Mishkin, undertook extensive efforts to locate the owner of the Property to obtain consent for access. Ms. Mishkin contacted the Jefferson County Development Council, Geographic Information System Department, and Assessment/Tax Claim Department for more information on the Property. Ms. Mishkin also contacted the Clearfield County Assessment and Tax Claim Department, representatives from a railroad company who owns a right-of-way near the Property, and the son of a nearby landowner who she had been in contact with. None of these efforts revealed any

additional information regarding the ownership of the Property. Mishkin Declaration, ¶ 10.

Ms. Mishkin also requested the assistance of an EPA contractor. The contractor unsuccessfully attempted to engage a local title search company to investigate the Property and contacted a retired local land surveyor who was unable to provide any additional information on the Property. Mishkin Declaration, ¶ 10.e.

Ms. Mishkin also requested the help of EPA Civil Investigator Carlyn Prisk. Ms. Prisk initiated follow-up communications with the local offices Ms. Mishkin had contacted, searched all publicly available tools for information concerning the Property, and retained a contractor to perform a professional title search on the Property and surrounding parcels in the Wetland Area. Ms. Prisk's efforts also did not provide any additional information on the Property.  Mishkin Declaration, ¶ 10.h.

Despite these efforts, the owner of the Property remains unidentified. Mishkin Declaration, ¶ 11.

## STATUTORY BACKGROUND

CERCLA, 42 U.S.C. §§ 9601-9675, and the governing case law authorize this Court to issue the requested Warrant to allow EPA to engage in investigations and sampling at the Property. The United States Congress enacted CERCLA in response to widespread concern over the severe environmental and public health effects arising from the improper disposal of hazardous wastes and other hazardous substances. *See generally Eagle-Picher Indus. v. EPA*, 759 F.2d 922, 925–26 (D.C. Cir. 1985). CERCLA's purpose "is to facilitate the prompt clean-up of hazardous waste sites." *In re Bell Petroleum Servs., Inc.*, 3 F.3d 889, 894 (5th Cir. 1993); *see also Burlington Northern & Santa Fe Ry. Co. v. United States*, 556 U.S. 599, 602 (2009). To further that purpose, Congress provided EPA with "the authority and the funds necessary to

respond expeditiously to serious hazards without being stopped in its tracks by legal

entanglement before or during the hazard clean-up." *Boarhead Corp. v. Erickson*, 923 F.2d 1011,

1019 (3rd Cir. 1991). One of the agency's tools for a prompt and effective response action is the

access and information gathering authority of Section 104(e) of CERCLA, 42 U.S.C. § 9604(e).

Section 104(e) of CERCLA, 42 U.S.C. § 9604(e), provides EPA[2] with broad access

authority in order to effectuate the purposes of CERCLA. *See Key Tronic Corp. v. United

States,* 511 U.S. 809, 814 (1994) ("As its name implies, CERCLA is a comprehensive statute that

grants the President broad power to command government agencies and private parties to clean

up hazardous waste sites."); *New Jersey Dep't of Env't Prot. v. Briar Lake Dev.,* 736 F. Supp.

62, 66 (D.N.J. 1990) (recognizing that access for remediation is one of "the tools necessary for a

prompt and effective response to the problems of national magnitude resulting from hazardous

waste disposal").

Specifically, CERCLA provides that any officer, employee, or representative

of EPA is authorized to take actions, including sampling and inspection, "at a vessel, facility,

establishment, place, property, or location" if there is a reasonable basis to believe there may be

a release or threat of release of a hazardous substance or pollutant or contaminant.[3] 42 U.S.C.

§ 9604(e)(1). CERCLA further provides that any officer, employee, or representative of EPA is

---

[2] Section 104 of CERCLA authorizes the President to take the various actions discussed here.
The President has delegated that authority to EPA. Exec. Order No. 12580, sec. 2(g) and (i), 52
Fed. Reg. 2923, 2925 (Jan. 23, 1987) (delegating to EPA investigatory, response, and entry
authority under Section 104 of CERCLA with regard to non-federal facilities).

[3] "Hazardous substances" are broadly defined in section 101(14) of CERCLA, 42 U.S.C. §
9601(14), and include all substances identified at 40 C.F.R. § 302.4.

A "release" is defined at section 101(22) of CERCLA, 42 U.S.C. § 9601(22), to include, with
certain exceptions not relevant here, "any spilling, leaking, pumping, pouring, emitting,
emptying, discharging, injecting, escaping, leaching, dumping, or disposing into the
environment[.]"

authorized to enter at reasonable times any "vessel, facility, establishment, or other place or

property where entry is needed to determine the need for response or the appropriate response or

to effectuate a response action under this subchapter," and is further authorized to inspect and

obtain samples from any such location or property. 42 U.S.C. §§ 9604(e)(3)-(4).

If consent is not granted regarding any request for access under Sections 104(e)(3) or (4)

of CERCLA, EPA may issue an order directing compliance with the request and/or ask the

Attorney General to commence a civil action to compel compliance with the request. 42 U.S.C.

§ 9604(e)(5). Notably, Section 104(e) of CERCLA further states that EPA may "secur[e] access

or obtain[] information in any other lawful manner." 42 U.S.C. § 9604(e)(6). A court may thus

issue an *ex parte* administrative warrant for access and entry when EPA is unable to obtain

consent to access property from an owner. *In re Yoder's Slaughterhouse Site*, 519 F. Supp. 2d

574, 579 (D. Md. 2007); *see also Bunker Hill Co. Lead & Zinc Smelter v. EPA*, 658 F.2d 1280,

1285 (9th Cir. 1981) ("*Bunker Hill*").

### DISCUSSION

### A.  An *Ex Parte* Warrant is an Appropriate Vehicle for Gaining Property Access

A federal agency is authorized to apply for a warrant if Congress has granted the Agency

statutory inspection or entry authority. *United States v. M/V Sanctuary*, 540 F.3d 295, 299-300

(4th Cir. 2008); s*ee also Bunker Hill,* 658 F.2d at 1285. Warrants may be obtained on an *ex parte*

basis. *Bunker Hill,* 658 F.2d at 1285. A lesser showing of probable cause is required for an

administrative search than for a criminal search. The United States Supreme Court has noted the

following:

> Probable cause in the criminal sense is not required. For purposes of an
> administrative search . . . probable cause justifying the issuance of a
> warrant may be based not only on specific evidence of an existing
> violation but also on a showing that 'reasonable legislative or

administrative standards for conducting an . . . inspection are satisfied with respect to a particular [establishment].'

*Marshall v. Barlow's, Inc*., 436 U.S. 307, 320-21 (1978) (quoting *Camara v. Municipal Court,* 387 U.S. 523, 538 (1967)).

Probable cause exists for issuance of a warrant for the entry requested by the EPA under the standard established by the U.S. Supreme Court in *Marshall.* Specifically, there are "reasonable legislative or administrative standards for conducting an . . . inspection" which are satisfied in this instance. *See id.*

### B. EPA Has a Reasonable Basis to Believe There May Be a Release or Threatened Release of a Hazardous Substance from the Property

Under CERCLA Section 104(e), the standard for determining when entry by EPA is authorized at a site is whether "there is a reasonable basis to believe there may be a release or threat of release of a hazardous substance or pollutant or contaminant." 42 U.S.C. § 9604(e)(1); *see also United States v. Fisher*, 864 F.2d 434, 437 (7th Cir. 1988). Here, EPA has a reasonable basis to believe there may be a release or threat of release of a hazardous substance or pollutant or contaminant for the following reasons:

a. The Property is located within the Site of an industrial manufacturing facility that manufactured china products from 1917 to 1985.

b. Analysis of samples taken at the Site thus far indicates that lead is present in surface and subsurface soils, sediment, surface water, and, to a more limited extent, groundwater in numerous locations throughout OU2 of the Site, including the Property.

c. Lead is a hazardous substance within the meaning of the Superfund statute and recognized as such under 40 C.F.R § 302.4.

8

d.  The levels of lead on the Site have been high enough to warrant an emergency removal action at OU1, listing on the National Priorities List, and Remedial Action at OU1.

e.  Investigations by EPA to date strongly indicate lead-containing wastes have been, and continue to be, migrating from OU1 into the OU2 Wetland Area through a 48-inch culvert connecting the two locations. Additional flow reaches OU2 through overland flow, primarily during periods of flooding.

f.  The concentration of lead in water flow from OU1 to OU2 are at levels that are hazardous to people in the area as well as local fauna and aquatic life.

Mishkin Declaration, ¶¶ 12.a-d.

### C.  EPA Seeks Entry to Perform Authorized Actions

The purposes of the entry and sampling requested by the United States are consistent with Section 9604(e)(1) of CERCLA, 42 U.S.C. § 9604(e)(1). The United States requests entry and sampling "for the purposes of determining the need for response, or choosing or taking any response action under [CERCLA]" as specified in Section 9604(e)(1) of CERCLA, 42 U.S.C. § 9604(e)(1). Specifically, the United States seeks entry to perform sampling work in the Property needed to assist in a remedial action on the Site. The sampling data is necessary to refine the location of any remedial action taken to reduce lead levels in the Wetland Area to levels protective of public health. Mishkin Declaration, ¶¶ 8, 13.

### D.  Entry is Sought by and for Authorized Persons

Section 104(e)(1), (3), and (4) of CERCLA, 42 U.S.C. §§ 9604(e)(1), (3), and (4), authorizes entry to inspect and take samples to "any officer, employee, or representative of the President, duly designated by the President." Authority to enter to inspect and collect samples was

delegated by the President to the EPA Administrator by Executive Order 12580, 52 Fed. Reg. 2923 (January 29, 1987), from the EPA Administrator to Regional Administrators by EPA Delegation 14-6, and from the EPA Region III Regional Administrator to, among others, Remedial Project Managers by EPA Region III Delegation 14-6. Entry is sought for EPA employees and/or EPA's authorized representatives, including contractors, attorneys, and representatives of other agencies of the federal government.

### E.  EPA Seeks Entry to Property Described in the Statute

The property where EPA seeks to enter to inspect, take samples, and perform response actions is described in Section 104(e)(3) of CERCLA, 42 U.S.C. § 9604(e)(3). Specifically, the Property is a place or property "from which or to which a hazardous substance or pollutant or contaminant has been or may have been released" within the meaning of Section 104(e)(3)(B) of CERCLA, 42 U.S.C. § 9604(e)(3)(B); "where such release is or may be threatened" within the meaning of Section 104(e)(3)(C) of CERCLA, 42 U.S.C. § 9604(e)(3)(C); and "where entry is needed to . . . effectuate a response action" within the meaning of Section 104(e)(3)(C) of CERCLA, 42 U.S.C. § 9604(e)(3)(C).

### F.  EPA Seeks Entry at Reasonable Times and Has Been Unable to Obtain Consent

The Warrant proposed by the United States provides for entry at reasonable times consistent with Section 104(e)(3) of CERCLA, 42 U.S.C. § 9604(e)(3). RPM Katherine Mishkin believes that the inspection and sampling work for which this warrant is requested can be accomplished over a period of twenty-one (21) days within ninety (90) days from the date access is obtained. Mishkin Declaration, ¶ 15. Such a period is reasonable given that the Wetland Area is not occupied, and no owner can be found for the Property. Therefore, there should be no interference with any ongoing business operations or habitation.

In addition, EPA has been unable to obtain consent to gain access to the Property. The United States has demonstrated that it has diligently attempted to identify the landowner and obtain consent and has been unsuccessful. As described above, RPM Katherine Mishkin undertook extensive efforts to locate the owner of the Property and obtain consent for access. Despite these efforts, the owner of the Property remains unidentified. Mishkin Declaration, ¶ 11. Because of this inability to gain consent, combined with the seriousness of the threat to the environment and surrounding community, a warrant is the proper means for EPA to secure access to the Property.

## CONCLUSION

For the reasons described above, the United States respectfully requests that its request for an administrative warrant be granted to authorize entry to perform the actions described in the United States' proposed warrant.

Respectfully submitted,

CINDY K. CHUNG
United States Attorney

*/s/ Jacqueline Brown*
JACQUELINE C. BROWN
Assistant U.S. Attorney
Western District of Pennsylvania
Joseph F. Weis, Jr. U.S. Courthouse
700 Grant Street, Suite 4000
Pittsburgh, PA 15219
Tel.: 412-894-7565
Fax: 412-644-6995
E-mail: jacqueline.c.brown@usdoj.gov
PA Bar No. 330010

JEFFREY K. SANDS
Assistant Section Chief
Environmental Enforcement Section
Environment and Natural Resources Division
United States Department of Justice

EMILY L. DEVILLE
Trial Attorney
Environmental Enforcement Section
Environment and Natural Resources Division
United States Department of Justice
P.O. Box 7611
Washington, DC 20044-7611
Telephone: (202) 514-2045
Email: Emily.DeVille@usdoj.gov
Hawaii Bar No. 011332

*Attorneys for Plaintiff*
*The United States of America*

OF COUNSEL:

Christopher P. Minott (3RC10)
Assistant Regional Counsel
United States Environmental Protection Agency
Four Penn Center, 1600 John F. Kennedy Blvd.
Philadelphia, PA  19103
Phone: (215) 814-2484
Email: minott.christopher@epa.gov